UNITED STATES of America, Plaintiff,

v.

L. A. REDDING, Defendant.

Civ. A. 629.

United States District Court
M. D. Georgia, Columbus Division.

April 22, 1957.

884

Robert B. Thompson, Asst. U. S. Atty., Macon, Ga., for plaintiff.

Walter E. Taylor, Jr., Cuthbert, Ga., for defendant.

BOOTLE, District Judge.

This action is brought to enforce against the defendant the provisions of Section 346 of the Agricultural Adjustment Act (7 U.S.C.A. § 1346) by collecting the penalties on the 1955 farm marketing excess of cotton established under the Act and regulations issued thereunder for a farm operated by him in 1955, identified on the records of the Clay County Agricultural Stabilization and Conservation Committee by farm No. 412.

Looking first at the Act and regulations, we find that the Act makes provision for the determination of a cotton acreage allotment, a normal yield of cotton, and a marketing quota for all farms qualifying thereunder (7 U.S.C.A. §§ 1301(b) (13) (G), 1344).

Section 346 of the Act (7 U.S.C.A. § 1346) provides that whenever farm marketing quotas are in effect with respect to any crop of cotton, the producer shall be subject to a penalty on the "farm marketing excess" ; that until a downward adjustment is made on the basis of the actual yield, the penalty shall be computed on the normal production of the excess acreage, and that the person liable for payment or collection of the penalty shall be liable also for interest thereon at the rate of 6% per annum from the date the penalty becomes due until the date of payment. All penalties are required to be paid in such manner, at such times, and under such conditions as the Secretary of Agriculture may, by regulations, prescribe. 7 U.S.C.A. § 1372(b).

The marketing quota provisions of the Act were made effective with respect to the 1955 crop of cotton and pursuant to the Act (7 U.S.C.A. § 1375) the Secretary issued regulations pertaining to acreage allotments and marketing quotas for the 1955 crop of cotton. (19 F.R. 7213, 7863, 8104, 8768; 20 F.R. 3979, 4939).

The regulations provide that the farm marketing excess for the 1955 crop of cotton for any farm shall be the normal production of the acreage planted to cotton on the farm in excess of the farm acreage allotment therefor, but that if the producer establishes on or before March 15, 1956, that the actual production of cotton on the farm in 1955 is less than the normal production of the acreage planted to cotton on the farm in 1955, the farm marketing excess shall be adjusted downward to the amount by which such actual production exceeds the normal production of the farm acreage allotment. (20 F.R. 3982, Secs. 722.650, 722.652).

The regulations provide further that whenever measurement of the acreage planted to cotton on the farm is pre-

vented by a producer, and the County Committee determines that a reasonably accurate estimate can be made of the acreage planted to cotton, such committee shall provide for such an estimate to be made, and if the producer fails or refuses to establish the amount of lint cotton produced in 1955 on the farm, and if the penalty collected in connection with marketings of cotton reported by buyers is less than the penalty due on the farm marketing excess determined on the basis of the estimated acreage planted to cotton, the farm marketing excess and the penalty for the farm shall be established on the basis of the normal yield and the estimated acreage planted to cotton in excess of the farm acreage allotment and the operator of the farm shall be notified of such determinations. (20 F.R. 3982, Sec. 722.650(b)).

The rate of penalty applicable to the 1955 crop of cotton is 17.7 cents per pound (20 F.R. 4939, Sec. 722.666), and the regulations provide that the penalty on the farm marketing excess shall be paid not later than March 15, 1956 (20 F.R. 3985, Sec. 722.669(b)).

Now looking to the facts of this case, we find that the defendant in 1955 was a producer of cotton on said farm No. 412 and after the performance and occurrence of all conditions precedent contained in the applicable provisions of the Act and regulations, and in accordance therewith, the Clay County Committee established a cotton acreage allotment of 12 acres for said farm and a normal yield of 200 pounds of lint cotton per acre for said farm for the 1955 crop of cotton. A "Notice of Farm Acreage Allotment and Marketing Quota for the 1955 Crop of Upland Cotton" was mailed to the defendant.

The defendant prevented measurement of the acreage planted to cotton on said farm. The Committee made several efforts to measure the acreage, but the defendant stood them off with a statement to the effect that he believed he would not fool with measuring it. The Committee then determined that a reasonably accurate estimate of the acreage planted to cotton could be made and estimated the acreage planted to cotton as 23.7 acres. No buyers reported the collection of any penalties due on cotton produced on this farm. The defendant was notified of the estimate of acres planted to cotton and did not establish the amount of lint cotton produced on said farm in 1955.

The County Committee issued to the defendant a "Notice of Farm Marketing Quota, Farm Marketing Excess and Amount of Penalty Due" with respect to said farm, containing the following data:

| "Farm cotton acreage allotment | 12.0 | acres |
|---|---|---|
| "Acreage of cotton on the farm | 23.7 | acres |
| "Excess acreage of cotton | 11.7 | acres |
| "Normal yield per acre | 200 | pounds |
| "Normal production of acreage allotment | 2400 | pounds |
| "Actual production | . . . . . . . . . . . . | |
| "Farm marketing excess of cotton | 2340 | pounds |
| "Amount of penalty | $414.18 | |
| "Final date for payment of penalty | March 15, 1956" | |

Said notice informed the defendant of his right to a downward adjustment of the farm marketing excess if the actual yield of the farm was less than the normal yield. The defendant made no application for an adjustment of the farm marketing excess determined for the farm on the basis of the actual yield within the time required by the regulations.

Such being the facts, the defendant runs head-on into the following provisions of the regulations:

"Whenever the county committee determines that a reasonably accurate estimate can be made of the

acreage planted to cotton on any such farm for which measurements have been prevented, the county committee shall provide for such an estimate to be made, and if the producer fails or refuses to establish the amount of lint cotton produced in 1955 on the farm and if the penalty collected in connection with marketings of cotton reported by buyers pursuant to Sec. 722.677(c) is less than the penalty due on the farm marketing excess determined on the basis of the estimated acreage planted to cotton, the farm marketing excess and the penalty for the farm shall be established on the basis of the normal yield and the estimated acreage planted to cotton in excess of the farm acreage allotment * * " (Sec. 722.650(b)).

"Unless application for an adjustment in the farm marketing excess is made within the period of time provided for in this paragraph, the farm marketing excess as determined pursuant to Sec. 722.650 shall be final as to the producers on the farm * * * " (Sec. 722.652(a)).

The County Committee, in accordance with the regulations, determined that the defendant planted 23.7 acres to cotton, which was 11.7 acres in excess of his acreage allotment and that his farm marketing excess of cotton was 2340 pounds. The defendant made no application for an adjustment in this farm marketing excess and, accordingly, in the words of the regulations, "the farm marketing excess as determined * * * shall be final as to the producers on the farm."

■ . This determination by the Committee was in no wise arbitrary or capricious and the defendant has made no showing of committee bias, prejudice, fraud or bad faith. The Committee acted reasonably in estimating defendant's cotton acreage at 23.7 acres and in determining his farm marketing excess. In view of the Committee's action, reasonable as it was, it is not necessary that this Court make a specific finding as to defendant's actual cotton acreage or as to his farm marketing excess. Under the evidence adduced in this trial, however, I find that the defendant planted substantially all, if not all, of the acreage estimated by the Committee; namely, 23.7 acres.

Accordingly, the plaintiff is entitled to recover of the defendant the sum sued for, $414.18, plus interest thereon at 6%' per annum from March 15, 1956.

The defendant is not entirely without this Court's sympathy. He chafes at being "cabin'd, cribb'd, confined" by Governmental regulations. He looks back pleasurably to the days when he could plant as much cotton as he wanted to and no committee claimed the right to measure his acreage. His rugged individualism, a quality not entirely without· merit, is slow to adjust to present day farming.

But there is another side to the coin. In our republican form of Government it is customary that the majority shall rule. The National marketing quota becomes ineffective if opposed by more than one-third of the farmers voting in the referendum. 7 U.S.C.A. § 1343. The quota is an adjunct of the price support system. Acreage limitations are· compensated for by higher or stabilized prices. Thus, if a farmer frees himself from the quota yoke and produces. without restraint he reaps where he has. not sown.

The impact upon an old fashioned· farmer like this defendant of the novelty· of the statutes and regulations is illustrated by the following conversation, reported to have occurred in the corridors. of the courthouse while this case was being tried at the heel of the criminal calendar. The reported conversation was between two of the defendant's. neighbors, as follows:

"Q. Who are they trying now?

"A. They are trying Mr. Redding.

"Q. What are they trying Mr.. Redding for?

"A. Farming."

An intermittent spectator at the trial could well have received that impression.

Counsel for the plaintiff will prepare a judgment in accordance herewith and submit same to counsel for the defendant, who shall have five days for suggestions as to form.